UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

STEPHANIE SMITH, ET AL.

VERSUS

DG LOUISIANA, LLC, ET AL.

CIVIL ACTION

NO. 3:19-CV-360-JWD-RLB

**RULING ON MOTION TO EXCLUDE TESTIMONY AND OTHER EVIDENCE PERTAINING TO THE FUTURE TREATMENT RECOMMENDATIONS ATTRIBUTED TO DR. JAFFARZAD, DR. GRAHAM AND DR. ACOSTA IN THE LIFE CARE PLAN PREPARED BY AARON WOLFSON, PH.D.**

Before the Court is the *Motion to Exclude Testimony and Other Evidence Pertaining to the Future Treatment Recommendations Attributed to Dr. Jaffarzad, Dr. Graham, and Dr. Acosta in the Life Care Plan Prepared by Aaron Wolfson, Ph.D.* ("*Motion*") (Doc. 23) made by defendant DG Louisiana, LLC ("Defendant" or "DG"). It is opposed by plaintiffs Stephanie Smith ("S. Smith" or "Plaintiff") and Dwayne Smith (collectively, "Plaintiffs"). (Doc. 26.) Defendant filed a reply. (Doc. 29.) For the following reasons, the *Motion* is denied.

I.  **BACKGROUND AND ARGUMENTS OF THE PARTIES**

This matter arises from a slip and fall accident which occurred at a Dollar General store on March 25, 2018. (Doc. 23-1 at 2.) S. Smith claims she suffered injuries in the fall. (*Id.*) Plaintiffs hired Aaron Wolfson, Ph.D. ("Wolfson") to develop a life care plan. (*See* Doc. 23-2.) In connection with his work preparing a life care plan, Wolfson met with four of S. Smith's treating physicians: Dr. Jorge Isaza ("Isaza"), Dr. Sean Graham ("Graham"), Dr. Nina Jaffarzad ("Jaffarzad") and Dr. Joseph Acosta ("Acosta"). (*Id*. at –6.) In his report, Wolfson lists future medical treatment he represents was recommended by one or more of these four doctors along with the frequency, duration and cost of the treatment. (*Id*. at 6–10.)

1

>Defendant argues that three of the physicians (Jaffarzad, Graham and Acosta)
>
>have testified that the identified future treatment recommendations contained in Wolfson's Life Care Plan are more probably than not unrelated to the subject incident – and in some cases not even recommended. Thus, Wolfson should be barred from offering any testimony [related to certain specific treatments][,] and plaintiff should be barred from introducing other evidence pertaining to these recommendations as they are irrelevant to the subject litigation and must be excluded.

(Doc. 23-1 at 1–2; *see also id*. at 3, 9.) In support of its contention, DG points to deposition excerpts from Jaffarzad, Graham and Acosta which it contends contradicts Wolfson's recommendations as to certain specific treatments. (*See id.* at 2–7.) Specifically, DG points to testimony from Jaffarzad in which she testifies that her treatment of Plaintiff would have been the same even had Plaintiff not had the fall (*id*. at 3–4) and that some of the treatment Wolfson has her recommending is not treatment she would recommend "at this time" (*id*. at 4). DG also quotes testimony from Graham (*id*. at 6–7) and Acosta (*id*. at 5–6) to the same effect. Finally, DG directs the Court's attention to testimony from Acosta that some items Wolfson states Acosta recommended were not recommended by him. (*Id*. at 5–6.)

In response, Plaintiffs argue that "each and every recommendation cited within the Life Care Plan . . . was based upon [Wolfson's] direct communication with each and every medical provider." (Doc. 26 at 1.) In addition, following the consultation Wolfson had with each medical provider at issue, Wolfson sent each a letter giving the providers a chance to change any of their proposed recommendations. (*Id*.) Further, the recommendations that made were, based on his consultations with providers, were for future medical expenses "resulting from" the subject accident. (*Id*. at 2.) Plaintiffs maintain that, although S. Smith had preexisting conditions, these were exacerbated by the accident. (*Id*. at 3.) Plaintiffs note that some of the future expenses challenged by Defendant were recommended by Isaza. (*Id*. at 5.) Therefore, as to those

2

recommendations, Wolfson's opinion remains supported and should not be stricken. (*Id*. at 4–5.) As to Acosta, Plaintiffs claim that his testimony is, at worst, equivocal on the issue of causation and therefore the issue should be presented to and decided by the jury. (*Id*. at 5–6.) Plaintiffs emphasize Graham testified that Plaintiff's herniated disc at L3-L4 level was exacerbated by the accident and the L4 fracture was caused by the accident. (*Id*. at 8.)

In its reply, Defendant argues that because three doctors testified that "certain future treatment" contained in the Life Care Plan was either not recommended or was unrelated to the subject accident, the recommended treatments are irrelevant to the issues in the case." (Doc. 29 at 1–2.) Defendant repeats the arguments and supporting testimony given in its original brief and maintains that allowing Wolfson's testimony would merely confuse the jury. (*Id*. at 2–3.)

## II.   STANDARD

Defendant's motion is a *Daubert* challenge. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001)).

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. The role of the trial court is to serve as the

3

gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." The [Supreme] Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable.

4

> This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 139 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

5

No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)). *See also Imperial Trading Co. v. Travelers Property Cas. Co. of America*, No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009). Furthermore, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292, at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp.2d 908, 935 (W.D. Wis. 2007)).

### III. DISCUSSION

In his report, Wolfson states that he consulted with Isaza, Graham, Jaffarzad and Acosta on February 19, 2020 and that their "recommendations are outlined in the life care plan section of this report." (Doc. 23-2 at 4–5.) In his affidavit, Wolfson states that during his consultations, he asked each of them "to enumerate future medical recommendations for Ms. Smith, on a more probable than not basis, *related to her slip and fall in Dollar General on 3/25/18*." (Doc. 26-1 at 2 (emphasis added).) In his affidavit, he states explicitly what is implicit in his report: "After each telephone conversation, I memorialized my understanding of each physician's recommendations in written correspondence which I forwarded to each physician." (*Id.*)

He then sent the written recommendations, based on his consultations, to each of the doctors. The summary sent to the doctors states "You recommended the following from a more probable than not standpoint related to Ms. Smith's injuries sustained on 03/25/18." (*Id.*) In this written communication, "[e]ach physician was advised to 'Please review this form. If there are any changes, denote the changes on this letter. Once reviewed, please sign and return this form to me." (*Id.*) Wolfson states emphatically in his affidavit that ***"none of the four treating physicians***

6

***provided any written or verbal feedback contradicting my understanding of their medical recommendations."*** (*Id*. (emphasis and bold in original).)

Wolfson states that certain of the deposition testimony of Jaffarzad stands "in direct conflict with the information [she] provided to me in our documented telephone conference." (*Id*. at 3.) He maintains that the Acosta's statement quoted by Defendant in briefing "is an ambiguous statement that may or may not obviate the need for this service [a neuropsychological evaluation] in the Life Care Plan" and that other statements quoted from Acosta's deposition are "again in conflict with our documented phone conference." (*Id*. at 3–4.) He also notes that some of Defendant's objections based on Acosta's testimony were also recommended by Isaza to which no objection was made. (*Id*. at 4.) Finally, he states that some of the objected to items from Graham were "for informational purposes only" and Wolfson clearly noted in his report that these were not being included in his future cost calculations. (*Id*.)

In this case, Wolfson consulted with Plaintiff's four treating doctors and asked them their recommendations for future medical treatment based on a more probable than not standard which was related to the subject accident. (Doc. 26-1 at 1–2.) He summarized their recommendations on a chart and sent it to them asking that "[i]f there are any changes, denote the changes on this letter. Once reviewed, please sign and return this form to me." (*Id*. at 2.) None of the doctors returned Wolfson's letter with changes. (Doc. 26-1 at 2.)

> An expert can rely upon otherwise inadmissible evidence as long as it is of a type "reasonably relied upon by experts in the particular field." Fed. R. Evid. 703. *See also*, *Monsanto Co. v David*, 516 F.3d 1009, 1015-1016 (5th Cir. 2008) (finding that expert could rely upon a report prepared by someone else). The purpose allowing experts to rely on another expert's opinions is that "an expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion." *Concerned Area Residents for the Environ. V. Southview Farm,* 834 F. Supp 1422, 1436 (W.D.N.Y. 1993).

7

*National Union Fire Ins. Co. v. Smith*, No. 11-830, 2014 WL 5794952, at *4 (M.D. La. Nov. 6, 2014) (deGravelles, J.).

It is therefore appropriate for a life care planner to consult with a plaintiff's treating doctors to gather their opinions regarding future medical care. It is appropriate for a life care planner to incorporate those opinions in his report. As Wolfson notes in his affidavit, this procedure is "the standard of practice that all certified life care planners are upheld. [sic]" (Doc. 26-1 at 2 (citing the Standards of Practice for Life Care Planners, 3A, 3B, 3C, 4A, 6D, 7B, and 7C attached to his affidavit at Doc. 26-1 at 33–35).)

With respect to certain treatments listed in Wolfson's report, there is an alleged conflict between what Acosta, Jaffarzad and Graham told Wolfson and what they testified to in their depositions.[1] But as Plaintiff points out in briefing (Doc. 27 at 7–8), and Wolfson notes in his affidavit (Doc. 26-1 at 3–4), Wolfson did not rely entirely on these three doctors for each of his projections. Thus, even if Defendant's objections were meritorious, it would be inappropriate to exclude Wolfson's testimony in its entirety. *Sheperd v. Willis*, No. 18-1091, 2020 WL 5742843, at *4 (M.D. La. Sept. 25, 2020) (deGravelles, J.).

But even as to those items of future medical expense where there is a conflict between what Wolfson swears the doctors told him and what they testified to in their depositions, this is an issue of fact for the jury to resolve and not a proper basis for exclusion under *Daubert*. *See id.* Defendant is free to cross examine Wolfson on those points in Wolfson's report it believes diverge from the doctors' testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its

---

[1] The Court also notes that some Wolfson's projections are not as clearly contradicted by the doctors' testimony as Defendant represents. *See, e.g.*, Graham's testimony where he attributes half of Plaintiff's need for future physical therapy to the fall at Dollar General. (Doc. 23-1 at 7 (quoting Doc. 23-5 at 6–7).)

8

admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d at 1077 (quoting *Viterbo,* 826 F.2d at 422); *see also Imperial Trading*, 2009 WL 2356292, at *3. Furthermore, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292, at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 528 F. Supp. 2d 908, 935 (W.D. Wis. 2007)). Here, Defendant's attack goes to the weight, not admissibility, of Wolfson's testimony and, no doubt, will be the subject of vigorous cross-examination by counsel for Defendant which is where the sufficiency of this testimony should properly be tested.

For these reasons, the motion is denied. Wolfson states in his affidavit that:

> …a Life Care Plan is a dynamic document, which in this case was published based on the best available information as I understood it from the treating physicians. I do not intend to testify to the necessity of medical treatment or future medical costs if it is indeed the testimony of some of Ms. Smith's treating physicians that the need and medical foundation for these services are somehow unrelated to the fall of 03/25/18."

(Doc. 26-1 at 4.) Should Plaintiff choose to issue a revised report based on the testimony of the physicians, he should do so no later than December 1, 2020. Defendant will have until December 15, 2020 to take the deposition of Dr. Wolfson regarding the revised report.

### IV.   CONCLUSION

For the foregoing reason, Defendant's *Motion to Exclude Testimony and Other Evidence Pertaining to the Future Treatment Recommendations Attributed to Dr. Jaffarzad, Dr. Graham, and Dr. Acosta in the Life Care Plan Prepared by Aaron Wolfson, Ph.D.* (Doc. 23) is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>November 4, 2020</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**